# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | | |
|---|---|---|
| JAMIE HILL-SPOTSWOOD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket no. 1:14-cv-00206-GZS |
| | ) | |
| MARY MAYHEW, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON MOTION TO DISMISS

Before the Court is Defendants' Motion to Dismiss Amended Complaint with Incorporated Memorandum of Law (ECF No. 7) ("Motion to Dismiss"). For the reasons stated herein, the Motion to Dismiss is GRANTED.

## I.  STANDARD OF REVIEW

The Federal Rules of Civil Procedure require only that a complaint contain "a short and plain statement of the grounds for the court's jurisdiction . . . a short and plain statement of the claim showing that the pleader is entitled to relief; and a demand for the relief sought[.]" Fed. R. Civ. P. 8(a)(1)-(3). The Court assumes the truth of the complaint's well-pleaded facts and draws all reasonable inferences in plaintiff's favor. Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012). Under Rule 12(b)(6), the Court "may consider only facts and documents that are part of or incorporated into the complaint." United Auto., Aero., Agric. Impl. Workers of Am. Int'l Union v. Fortuno, 633 F.3d 37, 39 (1st Cir. 2011) (internal citations omitted).

A viable complaint need not proffer "heightened fact pleading of specifics," but in order to survive a motion to dismiss it must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). In considering a motion

to dismiss, the Court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). A Plaintiff must include enough facts supporting a claim for relief that "nudge[s] [her] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570. "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (quoting SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010)); see also Iqbal, 556 U.S. at 678 (stating that the Court need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements"). At this point in the litigation, "the determination of whether an issue is trialworthy simply is not the same as the determination of whether a plaintiff states a claim upon which relief can be granted." Bodman v. Maine, Dept. of Health & Human Servs., 720 F. Supp. 2d 115, 121 (D. Me. 2010) (denying motion to dismiss a hostile work environment claim).

## II.     BACKGROUND

Plaintiff Jamie Hill-Spotswood is a resident of Augusta, Maine. (First Am. Compl. & Demand for Jury Trial (ECF No. 5) ("Am. Compl.") ¶ 1.) On March 16, 2013, Hill-Spotswood was employed as a Mental Health Worker at Riverview Psychiatric Center ("Riverview), which is operated by Defendant the Maine Department of Health and Human Services ("DHHS").[1] (Am. Compl. ¶¶ 3, 10, 11, 13.) Defendant Mary Mayhew is the acting Commissioner of DHHS. (Id. ¶

---

[1] In the Memorandum in Opposition to Defendants' Motion to Dismiss Amended Complaint (ECF No. 9) ("Opposition"), Plaintiff argues that the evidence reasonably inferred from the Amended Complaint will be "that Mental Health Workers are not paid very handsomely," and that "Defendants [engaged in a] scheme to obtain cheap labor to work naively in a remarkably dangerous environment." (Opposition at 2-3.) Those allegations are found nowhere in the Amended Complaint nor are they reasonable inferences from the allegations found in the Amended Complaint.

2.) Defendant Roland Pushard is the Assistant Director of Nursing at Riverview, and Defendant Mary Louise McEwen is the Superintendent of Riverview. (Id. ¶¶ 4, 5.)

As of March 16, 2013, Riverview was the medical center in the State of Maine that accepted individuals who had been declared not guilty by reason of insanity, including Mark Murphy. (Id. ¶¶ 14, 15.) In 2006, Murphy was found not guilty by reason of insanity and was placed at Riverview. (Id. ¶ 16.) Murphy had threatened and engaged in violence many times before entering Riverview. (Id. ¶ 17.) Riverview was aware of Murphy's history of violence. (Id. ¶ 18.) From 2006 to March 16, 2013, Murphy attacked and threatened several other patients and employees at Riverview. (Id. ¶ 19.)

As of March 16, 2013, Riverview had not disclosed to Hill-Spotswood, or any other employee of Riverview, Murphy's history of violence. (Am. Compl. ¶ 23.) The Amended Complaint alleges that Riverview did not take reasonable security measures to protect Hill-Spotswood and other employees from Murphy. (Id. ¶ 24.) There was no security on the floor where Hill-Spotswood worked with Murphy. (Id. ¶ 25.) The Amended Complaint also alleges that the Defendants did not provide Hill-Spotswood with adequate training in how to defend herself from violent patients or with weapons or tools with which to fend off attacks from patients. (Id. ¶¶ 26, 27.)

On March 16, 2013, Hill-Spotswood was approximately 18 weeks pregnant. (Am. Compl. ¶ 28.) Less than a week prior to March 16, 2013, Hill-Spotswood approached the Assistant Director of Nursing at Riverview, Defendant Pushard, told him that she was pregnant, and that she felt unsafe in that particular environment of patients. (Id. ¶ 29.) During the conversation, Hill-Spotswood specifically mentioned Murphy and indicated that she believed Murphy was becoming dangerous. (Id. ¶ 30.) The Complaint alleges that as of March 16, 2013, Pushard knew of the

propensity for violence of many of the patients where Hill-Spotswood worked and that Murphy was exhibiting behaviors that led other employees to conclude that Murphy posed a danger to the other patients and to staff. (Id. ¶¶ 31, 32.) In addition, at a team meeting on March 12, 2013, Riverview staff expressed to Riverview administration a concern that Murphy was cycling into a dangerous condition and should be relocated to the Special Care Unit. (Id. ¶ 33.)

After Hill-Spotswood expressed her concerns to Pushard, he assured her that he would "take care of it. No big deal." (Am. Compl. ¶ 35.) Neither Pushard nor any other Defendant or employee took any action or provided additional security measures in response to Hill-Spotswood's request to be reassigned or moved from the floor with Murphy. (Id. ¶¶ 36-41.) Hill-Spotswood remained assigned to the floor with Murphy. (Id. ¶ 40.)

On March 16, 2013, Murphy used a pen that he had secured as contraband and stabbed Hill-Spotswood repeatedly, which left her disfigured and emotionally damaged. (Am. Compl. ¶ 42.) The Amended Complaint alleges that as of March 16, 2013, Riverview was not meeting federal standards, including, but not limited, to staffing and security. (Id. ¶ 45.) The Amended Complaint alleges that had Riverview met those standards, the assault by Murphy on Hill-Spotswood would not have occurred. (Id. ¶ 46.) The Complaint also alleges that the attack on Hill-Spotswood could have been prevented had Riverview and DHHS taken security measures. (Id. ¶ 47.) The Complaint alleges that DHHS "in creating a dangerous situation, placing [] Hill-Spotswood directly into that dangerous situation, and failing to protect her from the grave danger it created[,] violate[d] her civil rights and shock[ed] the conscience." (Id. ¶ 48.)

On May 19, 2014, Plaintiff Hill-Spotswood filed her Complaint and Demand for Jury Trial, naming Mary Mayhew and DHHS as Defendants. (Compl. (ECF No. 1).) On July 16, 2014, Mayhew and DHHS moved to dismiss the Complaint for failure to state a claim. (Defs.' Mot. to

Dismiss Compl. with Incorporated Mem. of Law (ECF No. 4).) In response, on August 4, 2014, Plaintiff Hill-Spotswood filed her Amended Complaint (ECF No. 5) and asserted that the Motion to Dismiss filed on July 16, 2014 was thereby rendered moot. (Pl.'s Opp'n to Defs.' Mot to Dismiss (ECF No. 6) at 1.) The Amended Complaint named Roland Pushard and Mary Louise McEwen as additional Defendants. On September 4, 2014, Defendants filed their Motion to Dismiss the Amended Complaint (ECF No. 7) arguing that the First Amended Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

## III. DISCUSSION

The Amended Complaint asserts three counts arising under 42 U.S.C. § 1983: (1) Count One asserts that Defendant Pushard violated § 1983 under a state created danger theory; (2) Count Two asserts that Defendant McEwen violated § 1983 under a supervisory liability theory; and (3) Count Three asserts that Defendants Mayhew and DHHS violated §1983 under a municipal liability theory. In their Motion to Dismiss, Defendants argue that the state created danger theory is not applicable to this case, there is no supervisory liability and that DHHS and Mayhew cannot be held liable under a municipal liability theory. The Court will address each argument in turn.

### A. Count One: The State Created Danger Theory of Liability under Section 1983

In Count One, the Amended Complaint asserts that Defendant Pushard violated Hill-Spotswood's substantive due process rights.[2] (Am. Compl. ¶ 51.) Generally, a substantive due process claim requires that there be a deprivation of life, liberty or property by the government. J.R. v. Gloria, 593 F.3d 73, 79 (1st Cir. 2010). In this case, there is no dispute that the harm to Hill-Spotswood was at the hands of a private individual, Mark Murphy; nor is there any allegation that the government directed or assisted the private individual in causing the harm. "As a general

---

[2] The Amended Complaint names only Defendant Pushard in Count One. Nonetheless the Court would reach the same result if the Count were asserted against each of the named Defendants.

5

matter . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 197 (1989). Accordingly, the Amended Complaint asserts that the government violated Hill-Spotswood's substantive due process rights by placing her in a dangerous situation and leaving her unprotected from a violent private individual. (Am. Compl. ¶ 51.) Some courts have recognized an exception to DeShaney by finding that in limited situations and under particular fact patterns, the government may be held to a substantive due process violation where the government creates the danger to an individual and fails to protect that individual from the danger. See Rivera v. Rhode Island, 402 F.3d 27, 34-35 (1st Cir. 2005) (providing that at least three circuit have recognized a constitutional violation when the state fails to protect an individual against private violence under the state created danger theory); see also Kallstrom v. City of Columbus, 136 F.3d 1055, 1066-67 (6th Cir. 1998); Reed v. Gardner, 986 F.2d 1122, 1125-26 (7th Cir. 1993); Wood v. Ostrander, 879 F.2d 583, 589-90 (9th Cir. 1989).

The First Circuit has discussed the state created danger theory but not found it applicable in any of the cases in which it has been discussed. See, e.g., Rivera, 402 F.3d at 38; J.R., 593 F.3d at 79 n.3; Coyne v. Cronin, 386 F.3d 280, 287 (1st Cir. 2004) (stating that "we have recognized that the Due Process Clause may be implicated where the government affirmatively acts to increase the threat to an individual of third-party private harm or prevents that individual from receiving assistance"); Souza v. Pina, 53 F.3d 423, 427 (1st Cir. 1995) (finding that actions taken by a prosecutor implicating plaintiff in murders were not the type of affirmative acts that give rise to a constitutional duty to protect under the state created danger theory). For example, in Rivera v. Rhode Island, Jennifer Rivera witnessed a murder and twice went to the local police station to make a statement and identify the murderer. 402 F.3d at 31. Thereafter, Jennifer was continually

threatened with death if she agreed to testify about the murder. Id. The threats were conveyed to the police department, which repeatedly assured her that she would be safe in order to secure her testimony. Id. at 31-32. The day before Jennifer was scheduled to testify, she was killed in front of her house. Id. While acknowledging the outrage over Jennifer's death, the First Circuit found that the facts did not amount to a state created danger claim. The government may have rendered Jennifer more vulnerable to private harm, but the government did not create the danger posed by the private individual:

> The state's promises, whether false or merely unkept, did not deprive Jennifer of the liberty to act on her own behalf nor did the state force Jennifer, against her will, to become dependent on it. Moreover, the state did not take away Jennifer's power to decide whether or not to continue to agree to testify. Merely alleging state actions which render the individual more vulnerable to harm, under a theory of state created danger, cannot be used as an end run around DeShaney's core holding.

Id. at 38 (internal citation omitted). Therefore, to state a claim under the state created danger doctrine, a plaintiff must allege that state actors have taken affirmative steps to create or exacerbate the danger posed by a private individual. Id. at 36-37, 38. Nonfeasance by a state actor, including unfulfilled or unkept promises to protect, does not deprive an individual of their liberty or ability to act. Id. at 38; see also Robbins v. Maine Sch. Admin. Dist. No. 56, 807 F. Supp. 11, 13 (D. Me. 1992) (providing that "[m]ere nonfeasance has been held insufficient to constitute the requisite state action" under a state created danger theory).

Turning to the case before the Court, although the Amended Complaint states that DHHS "creat[ed] a dangerous situation, plac[ed] Ms. Hill-Spotswood directly into that dangerous situation, and fail[ed] to protect her from the grave danger it created[,]" that statement is conclusory and is not supported by allegations of affirmative acts taken on the part of any of the Defendants. (Am. Compl. ¶ 48.) Instead, the situation presented is similar to Rivera: a failure to protect from the violence of a private individual. 402 F.3d at 38. A private individual, Mark

7

Murphy, violently harmed Hill-Spotswood. (Am. Compl. ¶ 42.) The Amended Complaint alleges that Defendants knew of the risk of harm to Hill-Spotswood but did nothing to protect her from that harm, including failing to tell her of Murphy's propensity for violence.[3] (Id. ¶¶ 18, 23-27.) By failing to inform of the danger, the Amended Complaint infers that Defendants deprived Hill-Spotswood of the ability to make an informed choice regarding her continued employment. The Amended Complaint further alleges that Riverview maintained inadequate security measures. (Id. ¶¶ 24-27.) Finally, the Amended Complaint alleges that Hill-Spotswood approached Pushard with her safety concerns and was reassured that her concerns would be addressed. (Id. ¶¶ 29, 30, 35, 41.)

In short, the Amended Complaint alleges that the Defendants knew of the risk for harm but failed to take any steps to protect Hill-Spotswood from the dangers posed by violent patients. However, mere awareness by the government of the danger posed by a private individual is not sufficient to amount a due process violation. Deshaney, 489 U.S. at 201. There are no allegations that any of the Defendants took affirmative actions to create or enhance the danger posed to Hill-Spotswood by Murphy: failing to inform, failing to provide security or training and failing to keep promises to protect are all acts of nonfeasance. As in Rivera, the acts of Defendants are "not the kind of 'affirmative acts' by the state that would give rise to a constitutional duty to protect." 402 F.3d at 37 (citation omitted). The Defendants' actions did not deprive Hill-Spotswood of the liberty to act on her own behalf. See id. at 38. Even if the actions of the Defendants rendered Hill-Spotswood more vulnerable to the risk of physical harm from a patient, "an increased risk is not

---

[3] The Amended Complaint alleges that McEwen, Pushard's supervisor, knew of Murphy's history of violence and yet failed to take reasonable steps to protect the staff, including failing to promulgate policies to protect the staff, and failed to supervise Pushard. (Am. Compl. ¶¶ 54-66.) Finally, the Amended Complaint alleges that Mayhew, as the head of DHHS, failed to maintain an adequate level of discipline and supervision at Riverview and failed to promulgate policies to protect the staff from violent patients. (Id. ¶¶69-73.)

8

itself a deprivation of life, liberty, or property[.]" Id. at 37-38; see also Velez-Diaz v. Vega-Irizarry, 421 F.3d 71, 81 (1st Cir. 2005) (declining to find a state created danger where a witness agreed to work undercover and was murdered by a gang member and stating, "[t]here are risks inherent in being a cooperating witness, but the state does not create those dangers, others do, and the witness voluntarily assumes those risks"). Mindful of the First Circuit's admonition that "in a state creation of risk situation, where the ultimate harm is caused by a third party, courts must be careful to distinguish between conventional torts and constitutional violations, as well as between state inaction and action[,]" Rivera, 402 F.3d at 36 (internal citations and quotations omitted), the Court declines to the find sufficient affirmative acts on the part of the state in the Amended Complaint. In the absence of any alleged affirmative acts by Defendants to create or enhance the danger posed to Hill-Spotswood, her claim must fail. Count One of the Amended Complaint must be dismissed.

### B. Count Two: Supervisory Liability

In Count Two, Hill-Spotswood asserts a claim for supervisory liability against Defendant McEwen. Because Plaintiff has failed to state a constitutional claim in her Amended Complaint, her claim for supervisory liability based on that underlying constitutional claim also fails.[4] Rivera, 402 F.3d at 38-39 (dismissing plaintiff's claim of supervisory liability and failure to train because it was premised on the existence of an underlying constitutional violation). Count Two of the Amended Complaint must be dismissed.

---

[4] In the Memorandum in Opposition to Defendants' Motion to Dismiss Amended Complaint (ECF No. 9), Plaintiff indicates that Count Two is also alleged against Defendant Mayhew. That is not supported by the Amended Complaint. (See Am. Compl. ¶¶ 53-66.) Nonetheless, if the Amended Complaint had also asserted Count Two against Defendant Mayhew, the Court would likewise have dismissed that Count against Defendant Mayhew.

itself a deprivation of life, liberty, or property[.]" Id. at 37-38; see also Velez-Diaz v. Vega-Irizarry, 421 F.3d 71, 81 (1st Cir. 2005) (declining to find a state created danger where a witness agreed to work undercover and was murdered by a gang member and stating, "[t]here are risks inherent in being a cooperating witness, but the state does not create those dangers, others do, and the witness voluntarily assumes those risks"). Mindful of the First Circuit's admonition that "in a state creation of risk situation, where the ultimate harm is caused by a third party, courts must be careful to distinguish between conventional torts and constitutional violations, as well as between state inaction and action[,]" Rivera, 402 F.3d at 36 (internal citations and quotations omitted), the Court declines to the find sufficient affirmative acts on the part of the state in the Amended Complaint. In the absence of any alleged affirmative acts by Defendants to create or enhance the danger posed to Hill-Spotswood, her claim must fail. Count One of the Amended Complaint must be dismissed.

### B. Count Two: Supervisory Liability

In Count Two, Hill-Spotswood asserts a claim for supervisory liability against Defendant McEwen. Because Plaintiff has failed to state a constitutional claim in her Amended Complaint, her claim for supervisory liability based on that underlying constitutional claim also fails.[4] Rivera, 402 F.3d at 38-39 (dismissing plaintiff's claim of supervisory liability and failure to train because it was premised on the existence of an underlying constitutional violation). Count Two of the Amended Complaint must be dismissed.

---

[4] In the Memorandum in Opposition to Defendants' Motion to Dismiss Amended Complaint (ECF No. 9), Plaintiff indicates that Count Two is also alleged against Defendant Mayhew. That is not supported by the Amended Complaint. (See Am. Compl. ¶¶ 53-66.) Nonetheless, if the Amended Complaint had also asserted Count Two against Defendant Mayhew, the Court would likewise have dismissed that Count against Defendant Mayhew.

### C. Count Three: Municipal Liability

Count Three alleges a violation of 42 U.S.C. § 1983 against Defendant Mayhew and DHHS. To the extent that the Amended Complaint is attempting to assert a claim of supervisory liability or state created danger against Mayhew, those arguments have been previously addressed. Turning to the claim against DHHS, section 1983 states that:

> "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ."

42 U.S.C. § 1983. The Supreme Court and the First Circuit have both held that a State is not a person, and a State is therefore not subject to Section 1983 liability. Will v. Michigan Dep't of State Police, 491 U.S. 58, 64 (1989) (holding that "a State is not a person within the meaning of § 1983" and also providing that in passing section 1983, Congress did not intent to abrogate the States' Eleventh Amendment immunity). Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 124 (1st Cir. 2003) ("No cause of action for damages is stated under 42 U.S.C. § 1983 against a state, its agency, or its officials acting in an official capacity."). While it is true that municipalities are considered "persons" eligible for section 1983 liability, the holding that States are not subject to § 1983 immunity extends to governmental entities that are considered "arms of the State." Will, 491 U.S. at 70 (reiterating the holding of Monell v. Dep't of Social Servs. of City of New York, 436 U.S. 658 (1978) that municipalities are subject to section 1983 liability). The Amended Complaint states that: "Defendant, State of Maine, Department of Health and Human Services ("DHHS") is an agency of the State of Maine, which operates Riverview." (Am. Compl. ¶ 3.) Therefore, because DHHS is a governmental entity and an "arm of the State" of Maine, Count Three must be dismissed.

## IV. CONCLUSION

For the reasons stated herein, the Motion to Dismiss (ECF No. 7) is GRANTED.

SO ORDERED.

                                                             /s/ George Z. Singal
                                                             United States District Judge

Dated this 29th day of January, 2015.